# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

CODY KLOEPPER,

    Petitioner,

v.

JEFFERY UTTECHT,

    Respondent.

NO. 4:17-CV-5008-TOR

ORDER DENYING PETITION

BEFORE THE COURT is Petitioner Cody Kloepper's Petition for Writ of Habeas Corpus (ECF Nos. 1; 5). This matter was submitted for consideration without oral argument. The Court has reviewed the record and files herein, the completed briefing and is fully informed. For the reasons discussed below, the Petition is **DENIED**.

## BACKGROUND

The instant petition for habeas corpus arises out of a gruesome attack and rape of a 48 year old female and Petitioner's subsequent conviction for the crime.

ORDER DENYING PETITION ~ 1

Relevant to the decision, the victim (D.W.) arose around 4:00 a.m. in her fourth floor apartment to prepare for work. Soon after, although the victim did not hear anyone enter the apartment, someone approached her quickly from behind and hit her repeatedly with a metal bar. There was no evidence of forced entry and the victim stated that she kept her door locked. The assault ended and the assailant then raped the victim. During the rape, the victim heard the assailant use latex gloves. The assailant then left.

After the assailant left, the victim called 911 and reported that a man with a slender build and shaggy hair that was about 6' or 6'2" assaulted and raped her. The victim believed the assailant could have been one of the workers at the apartment complex because she believes the door was locked but there was no sound or signs of forced entry. The Washington Court of Appeals summarized what followed:

> D.W. was taken to a Spokane hospital for treatment of her head injuries. An officer there subsequently showed her a six-person photomontage that included a picture of Mr. Kloepper with short hair; D.W. did not identify anyone in the montage. Five days later she was shown a 23–person photomontage that included the same photo of Mr. Kloepper with short hair. [Kloepper had long hair at the time of the assault.] D.W. told officers that she recognized Mr. Kloepper with the short hair, but identified Mr. Karl Goering from the montage as the man who attacked her. She also identified Goering from an in-person line-up. He was arrested and charged for the attack on D.W.
>
> The crime scene investigators found what appeared to be the tip of a latex glove covered in D.W.'s blood. A small amount of male deoxyribonucleic acid (DNA) was recovered and subjected to Y-chromosome Short Tandem

Repeat (Y–STR) DNA testing. The result excluded Mr. Goering, but matched 1/440 males in the United States population, including Mr. Kloepper. The police advised D.W. on May 5, 2010, that the DNA "matched" Mr. Kloepper and excluded Mr. Goering. The police also advised that they would continue their investigation and had not ruled Goering out as a suspect.

D.W. returned to the police station on July 28, 2010, and gave a recorded statement that she now believed Mr. Kloepper was the attacker. When asked why she changed her mind, D.W. said, "Well the DNA thing." Mr. Kloepper was charged with the three noted offenses, all of which carried a deadly weapon enhancement. Charges against Mr. Goering were dropped. Mr. Kloepper met the victim's original identification of the assailant far better than Mr. Goering did.

The defense moved to exclude D.W.'s anticipated in-court identification on the basis that her receipt of the DNA information was impermissibly suggestive and had tainted the identification. The trial court denied the motion on the basis that the information went to the weight to be given the testimony rather than its admissibility.

Prior to opening statements, juror 8 indicated by note to the court that his parents were friends of D.W.'s parents while he was growing up. The court did not find a basis for excusal for cause, noting that Juror 8 had not seen D.W. in 40 years and probably would not recognize her.

The jury convicted Mr. Kloepper on all three counts and also found that he was armed with a deadly weapon on each count. The trial court ruled that the rape and assault convictions arose from separate conduct and the sentences would be served consecutively to each other, while the burglary count would be served concurrently with those counts. Mr. Kloepper then timely appealed to this court.

*State v. Kloepper*, 179 Wash. App. 343, 348–49 (2014) (footnote omitted).

//

//

## SCOPE OF FEDERAL HABEAS CORPUS REVIEW

Per 28 U.S.C. § 2254(a), "[t]he Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." As the Supreme Court has stated, "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Smith v. Phillips*, 455 U.S. 209, 221 (1982). In other words, Federal habeas corpus relief does not lie for errors or perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Rose v. Hodges*, 423 U.S. 19, 21-22 (1975) (per curiam).

Federal habeas corpus relief will not be granted unless the challenged trial error caused "actual prejudice" or had "substantial and injurious effect or influence" in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Habeas relief may not be granted if there is merely a reasonable possibility that trial error contributed to the verdict. *Calderon v. Coleman*, 525 U.S. 141, 146-47 (1998); *Brecht*, 507 U.S. at 637. In § 2254 proceedings the federal court must assess the prejudicial impact of a constitutional error under the

*Brecht* standard whether or not the state court recognized the error and reviewed it for harmlessness. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007).

## DISCUSSION

Petitioner asserts four grounds for habeas relief. However, as discussed below, the claims either fail or are otherwise not subject to habeas review.

1. **In-Court Identification of Petitioner by Victim**

The Due Process Clause of the Fourteenth Amendment protects an individual from conviction based on suggestive pretrial identification procedures arranged by the police, such as showups, lineups, or photographic montages. Judicial screening, or even suppression, of eyewitness identification testimony may be required if the identification procedure used in the defendant's case "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967) (use of one-person showup at witness's hospital bed), abrogated on other grounds by *Griffith v. Kentucky*, 479 U.S. 314 (1987); *see also Simmons v. United States*, 390 U.S. 377, 384 (1968) (suppression required if there is a "very substantial likelihood of irreparable misidentification") (photo lineup). The Due Process Clause, however, does not mandate the exclusion of all out-of-court identifications arranged by the police. *Manson v. Brathwaite*, 432 U.S. 98, 109-14 (1977). Rather, due process requires courts to assess – on a case-by-case, under the

"totality of the circumstances" – whether improper police conduct created a "substantial likelihood of misidentification." *Neil v. Biggers*, 409 U.S. 188, 199-201 (1972).

Courts apply a two-part test, first determining whether the challenged identification procedure was impermissibly suggestive, and second, examining the totality of circumstances to decide whether the witness's in-court identification is nonetheless reliable despite the suggestiveness of the confrontation procedure. *Biggers*, 409 U.S. at 198-99; *Ponce v. Cupp*, 735 F.2d 333, 336 (9th Cir. 1984). The factors to be considered in assessing the reliability of eyewitness identification include:

> [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witness' degree of attention, [3] the accuracy of his prior description of the criminal, [4] the level of certainty demonstrated at the confrontation, and [5] the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199-200. The reliability of the particular identification is the "linchpin" in determining its admissibility. *Brathwaite*, 432 U.S. at 114. Exclusion is required if there is "a very substantial likelihood of irreparable misidentification." *Simmons*, 390 U.S. at 384.

The mere presence of some questionable reliability, alone, does not automatically require the exclusion of identification evidence; there is no per se rule of exclusion for unnecessarily suggestive identification techniques.

*Brathwaite*, 432 U.S. at 109-14. As the Supreme Court has observed, "evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Id.* at 116. Moreover, there are multiple safeguards built into the adversary system that adequately caution juries against placing undue weight on dubious identification evidence, such as the defendant's right to cross-examine the witness and expose the testimony's fallibility, opening statements and closing arguments by counsel, the rules of evidence, jury instructions, and the reasonable doubt standard. *Perry v. New Hampshire*, 565 U.S. 228, 244-47 (2012).

Petitioner argues the victim's in-court identification of Petitioner as the assailant was the result of impermissibly suggestive out-of-court procedures that created a substantial likelihood of irreparable misidentification, thereby violating his right to due process. ECF No. 8 at 5. Petitioner argues that the trial court should have excluded the victim's identification of Petitioner because she only positively identified Petitioner as the assailant after the police informed her that there was a chance the DNA found at the scene of the crime matched Petitioner's, but did not match the person she originally picked in the photo montage and the in-person line-ups.

Petitioner brought this same argument before the Washington Court of

Appeals. The Washington Court of Appeals found the trial court did not abuse its discretion in denying the motion to exclude. The Court of Appeals found:

> As to the first factor, it is a close question whether there was suggestive behavior by the government. The communication of the DNA results by a government agent clearly affected the prior identification and, to that extent, can be seen as suggestive behavior. But, critically in our view, the suggestive behavior was not directed to D.W.'s identification of her assailant. Rather, it was made as part of an update of the pending case against Mr. Goering and used to explain to the victim that despite the filing of charges, the investigation was continuing against both men. D.W.'s change in her identification occurred 12 weeks after the communication from the detectives. This case is thus distinguishable from [*State v. McDonald*, 40 Wash. App. 743 (1985),] where the suggestive communication was made directly in response to the line-up identification. In light of these circumstances, we are not convinced that this truly was a suggestive identification procedure.
>
> However, we need not decide the case solely on that basis as we also doubt that the changed identification resulted in a "substantial likelihood" of a misidentification. If anything, the change prevented a misidentification. The other evidence in the case pointed to Mr. Kloepper, not Mr. Goering, as the assailant. Besides the DNA, Mr. Kloepper better fit D.W.'s initial description of the attacker as a thin, tall (6'2") man with long hair. Mr. Kloepper stood 6'4" and was thin with long hair at the time of the attack. [Mr. Goering was 5'10".] Additionally, against company policy shortly prior to the assault he accessed the supervisor's office in the middle of the night where keys to the apartments, including D.W.'s, could be accessed. D.W. reported that she had locked her door, but the assailant gained entry without force, a fact suggesting that a key was used.
>
> There was not a substantial likelihood of misidentification. Even without D.W.'s identification, the evidence pointed at Mr. Kloepper as the assailant. The defense was thoroughly able to develop D.W.'s earlier identifications of Goering and the reason for her change of mind in order to attack the reliability of her identification testimony. We believe this comported with due process of law. This court recently noted that the United States Supreme Court has declared that the protection "'against a conviction based on evidence of questionable reliability'" is not exclusion of the evidence,

but, rather is "'affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit.'" *State v. Sanchez,* 171 Wash. App. 517, 572 (2012) (quoting *Perry,* 565 U.S. at 237).

As noted, Mr. Kloepper exercised his ability to cross-examine D.W. and argue the reliability of her identification to the jury. In this case he was even able to show why she changed her mind, allowing him to note that the identification testimony was merely derived from the DNA evidence, which was admittedly not very powerful. D.W.'s testimony on this point was effectively impeached.

Under these circumstances, Mr. Kloepper was afforded due process of law. The deficiencies in D.W.'s identification properly went to the weight to be given that information by the jury rather than its admissibility. The trial court did not abuse its discretion in declining the motion to exclude.

*State v. Kloepper*, 179 Wash. App. at 351–52 (footnote replaced with bracketed information; citations altered).

The Court agrees with the Court of Appeals' conclusion and supporting rationale, especially that there was not a substantial likelihood of misidentification. Importantly, the description given by the victim matched that of Petitioner, and the victim later explained she did not pick Petitioner in the first instance because Petitioner had short hair in the photo presented to her. Given the totality of circumstances, the trial court properly allowed the jury to assess the credibility of the identification rather than exclude it entirely.

Moreover, there is nothing to suggest allowing the victim to identify Petitioner ultimately caused "actual prejudice" or had "substantial and injurious effect or influence" in determining the jury's verdict. *Brecht*, 507 U.S. 619, 637

(1993). Petitioner's counsel was able to present to the jury the surrounding circumstances of the victim's identification of Petitioner in order to impeach her testimony, which allowed the jury to assess the credibility and veracity of the identification. *See Brathwaite*, 432 U.S. at 116 ("We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.").

There was sufficient other evidence to tie Petitioner to the scene of the crime given his access to the room and the evidence showing he was the only person who retrieved a key to an apartment. His statements to the police about his whereabouts the night before were also blatantly contradicted,[1] and his statements to other

---

[1] Petitioner told the police he was at a bar until around midnight when he followed his friend home and then, after realizing he was too intoxicated to drive home, decided to spend the night at the apartment complex. ECF No. 7 at 25. However, Petitioner's friend actually left with his wife around 8:30 p.m. and Petitioner drove home around 11:00 p.m., where he began checking Craigslist ads seeking a sexual encounter with a stranger. ECF No. 7 at 25. Petitioner argues that he lied to the police to hide his true whereabouts from his girlfriend, ECF No.

persons regarding his conduct and where he spent the night were markedly inconsistent.[2] Further, among other things, the jury was presented evidence that Petitioner cut his hair to avoid matching the original description of the assailant given by the victim. *See* ECF No. 7 at 26. Taking the totality of evidence

---

5 at 42, but this does not comport with the fact that he was at his residence (where he lived with his girlfriend) by 11:00 and left around 12:43 since his story to the police would directly conflict with what his girlfriend knew to be true and also fails to explain how his story otherwise covered his late-night encounter. *See* ECF No. 7 at 25-26. Petitioner's account does not otherwise explain why he chose to go to the apartment complex after his late-night encounter.

[2]  "Kloepper . . . told Jeramie Morrow that he met a girl and went to a motel with her. ECF 8-1 at 250. He told Heather Morrow and Katherine Colleran (his longtime girlfriend) that he had stayed in the rec room of the apartment complex, not a vacant apartment. ECF 8-1 at 258, 289. He told Linda Metz, The Villas' apartment manager, that he had slept in a vacant apartment in the "D" building of the complex. ECF 8-1 at 458. However, Metz testified that particular vacant apartment was "stinky" and "nasty" and the carpet had to be changed due to pets. *Id*. at 430, 458. The police did not see any signs that the vacant apartment had been slept in. ECF 8-1 at 480." ECF No. 7 at 26 (citations altered)

presented before the jury, the in-court identification – buttressed by an explanation by Petitioner's counsel – does not give rise to more than a reasonable possibility that trial error contributed to the verdict. *Calderon*, 525 U.S. at 146-47; *Brecht*, 507 U.S. at 637.

### 2. **Ineffective assistance of counsel**

"The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). A claim of ineffective assistance of counsel is subject to a two-pronged analysis:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. In order to demonstrate prejudice, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The Sixth Amendment imposes a "highly demanding" standard upon petitioner to prove "gross incompetence." *Kimmelman*, 477 U.S. at 382. The reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Judicial review of a defense attorney's performance, therefore, is "doubly deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003).

"The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id. at 105.

Petitioner argues ineffective assistance of trial counsel violated his due process rights under the Sixth Amendment because counsel failed to interview, investigate or call witnesses identifiable from transcribed police interviews to corroborate Petitioner's third party perpetrator defense. ECF No. 5 at 26-27.

The Washington Court of Appeals adjudicated this ineffectiveness claim in Kloepper's personal restraint proceeding, concluding Kloepper's counsel's decision not to call the three witnesses Kloepper identified was a reasonable strategic decision:

> Mr. Kloepper asserts that trial counsel was ineffective for failing to interview and present the testimony of witnesses who purportedly would have corroborated his defense that Karl Goering committed the crimes. Mr. Kloepper cites to *State v. Visitacion*, a case in which counsel's performance was deemed deficient because counsel failed to contact or interview witnesses before trial. *State v. Visitacion*, 55 Wn. App. 166, 174 (1989).
>
> In *Visitacion*, the attorney evaluated the witnesses' potential testimony based on their police statements. The witnesses did not testify at trial and later changed their stories in written statements that corroborated the defendant's version of events. *Visitacion*, 55 Wn. App. at 174. The court held that the failure to investigate the witnesses' potential testimony fell below prevailing professional norms. *Id*.
>
> *Visitacion* does not help Mr. Kloepper. Mr. Kloepper identifies three witnesses (Clair Doyle, Kathy Cordle, and Megan Coop) who purportedly would help his defense. He notes that these three witnesses described Mr. Goering as a "racist" who had a "creepy" infatuation with a woman ("Sarah") who later had sex with a black man. Petitioner's Exhibit 1 at 27, Exhibit 2 at 11, Exhibit 3 at 20. Mr. Kloepper points out that these witnesses stated that Mr. Goering became angry when he learned that Sarah had sex with the black man. All of these witnesses told a detective that they did not know Mr. Goering's location on the night of the crimes. Mr.

> Kloepper argues that these witness statements establish Mr. Goering's motive for committing the crimes. His argument fails.
>
> None of these witness statements are relevant to the defense; accordingly, defense counsel's failure to call these witnesses can be attributed to trial tactics. Deficient performance is not shown by matters that go to trial strategy or tactics. *State v. Cienfuegos*, 144 Wn.2d 222, 226-27, 25 P.3d 1011 (2001). Mr. Kloepper's ineffective assistance of counsel argument fails.

ECF No. 7 at 38-39 (citing ECF No. 8-1 at 437-438).

The Commissioner of the Washington Supreme Court agreed with the Chief Judge's decision:

> A review of the transcripts of the police interviews of these witnesses shows that counsel was not professionally deficient in declining to pursue them. They suggested that Mr. Goering was upset that a woman with whom he had been infatuated (not the victim) had had sexual relations with another man, one of the witnesses saying he "snapped." But none of them knew Mr. Goering's whereabouts on the night of the crimes, and none of them conveyed any information connecting him to the crimes. DNA on a latex glove used in committing the crimes excluded Mr. Goering and pointed to Mr. Kloepper. And as a maintenance person at the apartment complex where the victim lived, Mr. Kloepper had access to the apartment keys (the victim was certain she had locked her door, and there was no evidence of forced entry.) Mr. Kloepper simply does not show that counsel's failure to pursue these witnesses fell outside the realm of reasonable tactical decisions, nor does he demonstrate that had counsel presented these witnesses there is a reasonable probability the outcome would have been different.

ECF No. 7 at 39-40 (quoting ECF No. 9-1 at 469).

The Court agrees with the conclusion of the Washington Court of Appeals and the Washington Supreme Court. The witnesses Petitioner points to did not have pertinent information to his trial. Petitioner fails to address the relevance of

the testimony in his Response. ECF No. 10 at 6. Relief is thus not available based on Petitioner's claim of ineffective assistance.

3. **Removal of juror**

Petitioner asserts that the trial court committed error of a constitutional dimension in failing to dismiss a juror. However, as Respondent observes,

> Kloepper's third ground for relief, alleging the trial court erred by failing to remove a juror who knew the victim and the victim's family, is unexhausted. He raised that claim on direct appeal in his Court of Appeals brief, *see* ECF No. 8-1 at 947-50, and the Court of Appeals discussed and rejected the claim in its published opinion. *State v. Kloepper*, 179 Wn. App. at 352- 54. However, Kloepper omitted the claim from his petition for review in the Washington Supreme Court. ECF No. 9-1 at 50.

ECF No. 7 at 8-9 (citations altered).

Petitioner concedes that the third ground for relief was not presented to the Washington Supreme Court. ECF No. 10 at 2. Accordingly, habeas relief on this ground is not available because Petitioner failed to exhaust his remedies.

4. **Sentencing Court's decision to impose consecutive terms**

In his fourth ground for habeas relief, Kloepper argues that the state trial court erred by imposing consecutive prison terms: "Trial court imposed consecutive sentences for crimes that clearly satisfy the 'same criminal conduct' test and should be ran [sic] concurrently." ECF No. 5 at 10, 55-60. As Respondent observed, this claim is a state-law issue only and fails to present a

federal constitutional ground for habeas relief. *See* ECF No. 7 at 42. As Respondent argues:

> Although Kloepper's fourth ground for relief employs the phrase "cruel and unusual punishment" to describe his sentence, it does not appear that Kloepper intended to raise the claim as a violation of the Eighth Amendment's Cruel and Unusual Punishments Clause. His supporting brief filed with this Court does not rely on the Eighth Amendment, nor does he cite any cases concerning the Eighth Amendment legal analysis. *See* ECF No. 5, attached brief at 55-60 (argument in support of claim 4). Moreover, Kloepper did not present his fourth ground to the state appellate courts as an Eighth Amendment issue. His arguments in the state courts raised this claim as a purely state-law issue. *See* Exhibit 8 (Court of Appeals brief), at 29-34; Exhibit 12 (petition for review), at 15-18. Respondent will therefore address the merits of Kloepper's fourth ground for relief as a state-law error and not an Eighth Amendment claim.

ECF No. 7 at 8

The habeas statute unambiguously provides that a federal court may issue the writ to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has repeatedly held that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. "[I]t is only noncompliance with federal law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (per curiam) (emphasis in original). This principle is applicable to habeas claims involving sentence challenges. "Absent a showing of fundamental unfairness, a state court's

misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). A state prisoner must show that an alleged state sentencing error was "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Richmond v. Lewis*, 506 U.S. 40, 50 (1992). A habeas challenge to a state trial court's exercise of discretion under state sentencing law fails to state a cognizable ground for federal habeas relief. *Souch v. Schaivo*, 289 F.3d 616, 622-23 (9th Cir. 2002).

Petitioner did not respond to Respondent's position and did not otherwise demonstrate the application of the state statute resulted in fundamental unfairness. *See* ECF No. 10. Accordingly, the Court cannot grant relief on this issue.

## CERTIFICATE OF APPEALABILITY

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant." A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner

misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). A state prisoner must show that an alleged state sentencing error was "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Richmond v. Lewis*, 506 U.S. 40, 50 (1992). A habeas challenge to a state trial court's exercise of discretion under state sentencing law fails to state a cognizable ground for federal habeas relief. *Souch v. Schaivo*, 289 F.3d 616, 622-23 (9th Cir. 2002).

Petitioner did not respond to Respondent's position and did not otherwise demonstrate the application of the state statute resulted in fundamental unfairness. *See* ECF No. 10. Accordingly, the Court cannot grant relief on this issue.

## CERTIFICATE OF APPEALABILITY

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant." A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner

misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994). A state prisoner must show that an alleged state sentencing error was "so arbitrary or capricious as to constitute an independent due process or Eighth Amendment violation." *Richmond v. Lewis*, 506 U.S. 40, 50 (1992). A habeas challenge to a state trial court's exercise of discretion under state sentencing law fails to state a cognizable ground for federal habeas relief. *Souch v. Schaivo*, 289 F.3d 616, 622-23 (9th Cir. 2002).

Petitioner did not respond to Respondent's position and did not otherwise demonstrate the application of the state statute resulted in fundamental unfairness. *See* ECF No. 10. Accordingly, the Court cannot grant relief on this issue.

## CERTIFICATE OF APPEALABILITY

Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant." A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(3). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner

must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.").

Petitioner is not entitled to a COA because he has not demonstrated that jurists of reason could disagree with the Court's resolution of his constitutional claims or could conclude any issue presented deserves encouragement to proceed further.

**IT IS HEREBY ORDERED:**

1. Petitioner Cody Kloepper's Petition for Writ of Habeas Corpus (ECF Nos. 1; 5) is **DENIED**.
2. A Certificate of Appealability is **DENIED**.

The District Court Executive is directed to enter this Order and Judgment accordingly, furnish copies to the parties, and close the file.

**DATED** December 14, 2017.



THOMAS O. RICE
Chief United States District Judge